**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN PETERSON, | )<br>) |
| Plaintiff, | ) Case No: 16 C 9340<br>)<br>) |
| v. | ) Magistrate Judge Jeffrey Cole<br>) |
| NANCY BERRYHILL,<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION**

The plaintiff, Kevin Peterson, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. 1382c(a)(3)(A). Mr. Peterson asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

**PROCEDURAL HISTORY**

Mr. Peterson applied for SSI on July 18, 2011, alleging that he had been disabled since December 1, 2009, as a result of herniated discs in his back, arthritis in his arm, migraines, depression, and chronic pain syndrome. (Administrative Record ("R.") 227-32, 250). His application was denied initially and upon reconsideration. (R. 157-63, 169-72). Mr. White continued pursuit of his claim by filing a timely request for hearing on August 24, 2012. (R. 185).

An administrative law judge ("ALJ") convened a hearing on May 27, 2014, and Mr. Peterson, represented by counsel, appeared and testified. (R. 50-156). In addition, a vocational expert, Pamela

Tucker, also testified. (R. 50, 136-145). On August 26, 2014, the ALJ issued a decision denying Mr. Peterson's application for SSI because, although he could not perform any of his past relevant work, he could perform at least a limited range of light work. (R. 22-44). This capacity allowed Mr. White to perform jobs that existed in significant numbers in the national economy, such as cleaner/polisher, address clerk, and document preparer. (R. 43). This became the final decision of the Commissioner when the Appeals Council denied Mr. White's request for review of the decision on January 27, 2016. (R. 4-9). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. White has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.

## STANDARD OF REVIEW

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016); *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

While the standard of review is deferential, "'this does not mean that we will simply rubber-stamp the Commissioner's decision without a critical review of the evidence.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015)(quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). *See also Cinatl v. Astrue*, 2011 WL 1743408, at *6 (N.D. Ill. 2011)("While the standard of review is

deferential, it is not abject."). In order for the court to affirm a denial of benefits, the ALJ must "minimally articulate" the reasons for her decision. *Brown*, 845 F.3d at 252. This means that the ALJ "must build an accurate and logical bridge between the evidence" and her conclusion. *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). The ALJ's decision must allow the court to assess the validity of her findings and afford the plaintiff a meaningful judicial review. *Murphy v. Colvin,* 759 F.3d 811, 819 (7th Cir. 2014). As Judge Posner has put it, "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

### III.

### DISCUSSION

There are issues with the vocational evidence in this case, and the ALJ's treatment of it, that require a remand, so the usual long and often tedious recounting of the large medical record will be dispensed with. Suffice it to say that, as the ALJ found, Mr. Peterson has a number of severe impairments, including arthritis of the neck, back, and wrist, migraines, depression, anxiety, and personality disorder. (R. 25). As a result of his physical impairments, the ALJ found that Mr. Peterson could perform light work that did not require repetitive pushing or pulling with his extremities; climbing ladders, ropes or scaffolds; balancing or crawling; more than occasional climbing ramps/stairs, kneeling, crouching, or stopping; and no more than frequent reaching, handling, or fingering. (R. 41).

The ALJ further found that, as a result of his psychological impairments, Mr. Peterson

3

suffered from a mild restriction in his activities of daily living, a moderate restriction in his social functioning, and a moderate limitation in his ability to maintain concentration, persistence, and pace. (R. 27). Because of these limitations, the ALJ determined that Mr. Peterson was limited to work that was unskilled, simple, and repetitive; and that involved only simple, routine instructions. He could not work with the general public. He could adapt to changes and make decisions that would be required in such work; would be distracted only rarely and would never be off task outside of break times. (R. 42 ). Despite all these limitations, the ALJ, relying on testimony from the vocational expert, determined that Mr. Peterson could perform work that existed in significant numbers in the economy. He could be a cleaner/polisher, an address clerk, or a document preparer. (R. 43). Accordingly, the ALJ found Mr. Peterson was not disabled and not entitled to SSI under the Act. (R. 43-44).

As just noted, along the way to reaching her decision, the ALJ determined that Mr. Peterson has moderate difficulties with concentration, persistence, and pace. (R. 27). The Commissioner's regulations do not quantify what is meant by "moderate" difficulties, but the regulations do instruct ALJs to rate the degree of limitation on a 5-point scale of none, mild, moderate, marked, and extreme. *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 698–99 (7th Cir. 2016); *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013); 20 C.F.R. § 416.920a. So a moderate limitation would rate a 3, and would be fairly significant; in other words, the ALJ had to account for it in her residual functional capacity ("RFC") finding and in her hypothetical to the vocational expert. *O'Connor–Spinner*, 832 F.3d at 698; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

In her RFC finding, the ALJ said that Mr. Peterson has the capacity:

> to perform and sustain simple, repetitive work. He can understand, remember and carry out simple routine instructions. . . . He would be distracted only rarely by symptoms to the extent that he was off task and not productive outside of break time.

(R. 42). The ALJ's hypothetical to the vocational expert, she asked what work a person could d if they were limited to "simple, repetitive, unskilled work . . . could understand remember and carry out simple, routine instructions . . . ." Neither the hypothetical nor the RFC finding accounted for moderate difficulties maintaining concentration, persistence, and pace.

Limiting an individual to "simple, repetitive tasks" or "simple, repetitive, unskilled work" does not account for a moderate restriction in the ability to maintain concentration, persistence, and pace. *See Varga*, 794 F.3d at 814(hypothetical question positing a person capable of performing "simple, routine, and repetitive tasks" but unable to perform work involving "fast paced production" did not account for difficulties maintaining concentration, persistence, and pace); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)("we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). When an individual has a restriction on their ability to maintain concentration, persistence and pace, it's not a question of how simple the work is.

5

A simple job or an unskilled job may easily exceed the limits of someone who has a moderate restriction on their ability to maintain concentration, persistence, and pace. *See Kasarsky v. Barnhart,* 335 F.3d 539, 544(7th Cir. 2003)("... the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained."); SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."). For example, imagine an unskilled job that involves a conveyor delivering a product to a worker who must then place it in a receptacle—product after product, receptacle after receptacle, over and over, all day long. Many unskilled, simple jobs are made up of precisely this type of tedium. Those of a certain age might recall the classic Lucille Ball–Vivian Vance sketch where the two were tasked with wrapping candies coming down a conveyor at a candy factory. *See* http://www.youtube.com/watch?v=8NPzLBSBzPI. The job is exceedingly simple. It is repetitive, routine, and unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation. This is why a limitation to unskilled, simple work does not necessarily account for a limitation in concentration.

Then there is the ALJ's finding that Mr. Peterson – who has a moderate restriction on his ability to maintain concentration, persistence, and pace – would only be distracted rarely to the extent he was off task. (R. 42). The two findings seem contradictory. The vocational expert testified that a person would have to be on task 85% of the time to maintain employment. (R. 142). Again, that moderate limitation is a 3 on a 5-point scale. As the Seventh Circuit has explained, "[i]f a moderate

6

impairment on maintaining concentration, persistence, and pace equates to being off task at least 15% of the time then, according to the vocational expert, [plaintiff] is essentially unemployable. *O'Connor–Spinner*, 832 F.3d at 699. So the ALJ's RFC and hypothetical were deficient in at least two aspects.

Then there are the jobs the ALJ – relying on the vocational expert's testimony – found Mr. Peterson could do: cleaner/polisher, address clerk, and document preparer. (R. 43). The vocational expert and, in turn, the ALJ, drew these jobs from the Dictionary of Occupational Titles ("DOT"). The DOT describes the position of document preparer as follows:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

http://www.occupationalinfo.org/24/249587018.html. Based on this description, the job would seem to require no small amount of concentration, involving, as it does, "cut[ting] documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife." http://www.occupationalinfo.org/24/249587018.html.

As described in the DOT, the job of cleaner/polisher would also seem to demand focus and concentration:

> Cleans and polishes chromium or nickel plated articles with cloth and liquid cleanser.

> May remove paint or other foreign matter adhering to surface of article with solvent, knife, or steel wool. May be designated according to type of metal cleaned as Chrome Cleaner (any industry); Nickel Cleaner (any industry).

http://www.occupationalinfo.org/70/709687010.html. In addition, manual dexterity and handling of objects are the most important aspects of the job of Cleaner/Polisher. http://www.occupationalinfo.org/onet/98999a.html. The worker spends nearly all of their time doing this. http://www.occupationalinfo.org/onet/98999a.html. Mr. Peterson, according to the ALJ, could not perform constant fingering or manipulating.

An address clerk, according to the DOT, "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." http://www.occupationalinfo.org/20/209587010.html. The most important requirements for this job, by far, are wrist and finger speed and dexterity. http://www.occupationalinfo.org/onet/55307.html. Again, Mr. Peterson cannot perform constant fingering or manipulating.

There is also the matter of whether these jobs really do exist in significant numbers in the economy. The job of document preparer has not be observed and evaluated in over 30 years. http://www.occupationalinfo.org/24/249587018.html. Understandably, the Seventh Circuit has expressed skepticism over whether jobs involving reducing documents to microfilm even exist anymore. *Hill v. Colvin*, 807 F.3d 862, 869 n.10 (7th Cir. 2015). The court has said about the same for jobs addressing envelopes:

> . . . does anyone use a typewriter any more? Most addressing nowadays is either personal, as when one is sending a Christmas or get-well card, or automated, as in the case of business mailings, including mass mailings of advertisements or magazines.

*Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015). The address clerk listing in the DOT is 40 years

out of date. http://www.occupationalinfo.org/70/709687010.html. But, there's reason to doubt the vocational expert's numbers beyond this.

The vocational expert testified that 1100 address clerk jobs in Illinois and 35,000 nationwide. The numbers for cleaner/polisher were 1200 and 30,000; the numbers for document preparer were 1300 and 4000. (R. 140-41). As Judge Posner has remarked, such "suspiciously round numbers . . . sound like guesses." *Forsythe v. Colvin*, 813 F.3d 677, 680 (7th Cir. 2016). All the more so when one considers that, in recent hearings, the numbers vocational experts have given for the job of document preparer in Illinois – the vocational expert here said 1300 – have varied significantly, from a high of 11,000 in *Hernandez v. Colvin*, 2016 WL 7231607, at *4 (N.D. Ill. Dec. 14, 2016) to a low of 1200 in *Cowen v. Colvin*, 2013 WL 6009538, at *4 (N.D. Ill. Nov. 13, 2013), with seemingly random figures – or guesses – in between. *See, e.g., Wright v. Colvin*, 2015 WL 7293319, at *3 (S.D. Ill. Nov. 19, 2015)(8,000 jobs); *Hunt v. Colvin*, No. 14 CV 3098, 2016 WL 1060182, at *6 (C.D. Ill. Mar. 15, 2016)(3,500 jobs); *Cooper v. Colvin*, 2016 WL 6998589, at *2 (C.D. Ill. Nov. 30, 2016)(2,800 jobs). According to the vocational expert who testified in this case, in just three years, Illinois saw the number of envelope addresser positions– which seemingly would be going the way of the dinosaurs – *increase* by over 20%. *Cf. Gonzalez v. Colvin*, 2014 WL 4627833, at *3 (N.D. Ill. Sept. 16, 2014)(915 address clerk jobs in April 2011). In about the same period, half of all such jobs were eliminated nationwide. *Cf. Cowen v. Colvin*, 2013 WL 6009538, at *4 (N.D. Ill. Nov. 13, 2013)(70,000 address clerk jobs nationally in September 2011). Illinois may really be bucking a serious national trend in the addressing business; or, perhaps not.[1]

---

[1] The market for cleaner/polisher jobs is even more volatile. Again, according to the vocational expert in this case, Illinois lost nearly 60% of its cleaner/polisher jobs between 2012 and 2014. *Cf. Hart v. Colvin*, 2015
continue...

These vocational evidence issues are sufficient to require a remand, so no other issues need be addressed. But a few words regarding the ALJ's credibility finding might be worthwhile. In March of 2016, the Social Security Administration announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." Social Security Ruling 16-3p; "Titles II and XVI: Evaluation of Symptoms in Disability Claims," 81 Fed. Reg. 14166, 14167 (effective March 28, 2016), 2016 WL 1119029, *1-2. The new Ruling explains that:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.

2016 WL 1119029, *10. As the Seventh Circuit has put it, "[t]he change in wording is meant to clarify that ALJs aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016)(emphasis supplied).

In this case, the ALJ found Mr. Peterson not credible, at least in part, due to inconsistencies between his statements at the administrative hearing regarding his work activity and his reports elsewhere in the record. (R. 25, 41). Now, if the ALJ hoped to make the point that Mr. Peterson was

---

[1]...continue
WL 5278793, at *6 (N.D. Ill. Sept. 9, 2015)(2800 jobs in May 2012). But another vocational expert put the number of these jobs at just 1000 in October 2011. *Lesner v. Colvin*, 2015 WL 5081267, at *4 (N.D. Ill. Aug. 24, 2015). So, the number of positions increased nearly threefold in seven months between October 2011 and May 2012. Or, again, perhaps not.

continuing to work during a period when he alleged his symptoms were such that he was disabled, that would seem to be permissible under the Ruling. 2016 WL 1119029, *8-9. Indeed, if it is not permissible, the very concept of truthfulness ceases to have any meaning. But if the ALJ was getting into Mr. Peterson's character for truthfulness – "the business of impeaching" – that would not seem to be permissible. On remand, then, the ALJ has to be careful to stay on the proper side of the line directed by the new Ruling and the ALJ should make clear the basis for his/her credibility decision. Such an explanation is helpful if not essential to meaningful appellate review. After all, cases that contain mere conclusions without some explanation are often deemed unacceptable by the Court of Appeals. *See, e.g., E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 764 (7th Cir. 2012) (rejecting opinion for lack of analysis); *Szmaj v. Am. Tel. & Tel. Co.*, 291 F.3d 955, 956 (7th Cir. 2002)(the case provided at best only "weak authority" because there is no discussion of the point, only a conclusion).

## CONCLUSION

The plaintiff's motion for remand [Dkt. #9] is GRANTED, and the Commissioner's motion for summary judgment affirming the ALJ's decision [Dkt. #13] is DENIED. This matter is remanded to the Commissioner for further proceedings consistent with this opinion.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/25/17